## Haviland's Appeal, Re Estate of Mary Hughes, a Minor.

On settlement of a guardians' account in the orphan's court, fraudulent alterations having been made in his books rendering them unworthy of credit, many items of credit were reduced and commissions disallowed.

(Decided January 17, 1887.)

January Term, 1886, No. 405 E. D., before MERCUR, Ch.

NOTE.—The commissions of a guardian will be disallowed where he has attempted to defraud his ward's estate. Lamb's Appeal, 58 P. 142; McCahan's Appeal, 7 Pa. 56. So will credits be when not supported by proper

J., GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County dismissing exceptions to the adjudication of the auditing judge restating a guardian's account. Affirmed.

James Haviland was appointed guardian of Mary Hughes, a minor, October 15, 1878, and filed his account as such March 30, 1885.

The account was called for audit before PENROSE, J., June 3, 1885. The manner in which the account was stated being objectionable, further proceedings were suspended until June 12, in order that the accountant might obtain counsel, and several other postponements were had until December 15, 1885, when the account was finally called up for audit.

The ward, at the time of the appointment of Haviland as guardian, was the wife of William Hughes. She became of age May 21, 1882. The account as originally filed included rents received and claimed credits for payments made for a period of more than two years after the ward became of age and it also claimed credit in a lump for payments alleged to have been made to or for the ward. The restated account ended in April, 1882.

The auditing judge, PENROSE, J., filed an adjudication, of which the following is a portion:

The restated account debits the accountant with $1,250, recovered from the security of a previous guardian, and $1,908.36, rents of premises 428 South Front street, collected from October, 1878, to April, 1882; and it gives or professes to give the items of the credits for maintenance, etc., of the ward. Both accounts show a balance due the accountant, the amount claimed by the restated account being $664.48.

Of these credits claimed in the restated account, $1,443.88 are for repairs of real estate, taxes, water rents, professional services, purchases of furniture, etc., for the ward, etc., etc., and $112.50 for coal purchased at various times, amounting in all to $3,822.84. This portion of the account was admitted to be

vouchers (Carr's Estate, 14 Phila. 265); or other satisfactory evidence (Williams's Estate, 3 Montg. Co. L. Rep. 52, reversed on other grounds in 119 Pa. 87, 12 Atl. 826; Watt's Accounts, 24 Pittsb. L. J. 117; Stone's Appeal, 23 W. N. C. 283, 1 Monaghan [Pa.] 710).

correct, or at least not seriously disputed, and vouchers were produced for most of the items.

The real controversy was with regard to the credits claimed for payments to the ward for maintenance, amounting in all to $2,108.54. No vouchers whatever were produced for these payments, the accountant stating that the ward had persistently and at all times refused to give a receipt. He produced, however, an account book, the entries in which corresponded with the items alleging payment to the ward of the account, and testified that he was able from it to swear that the payments were actually made at the time they purport to bear date; the entries, as he stated, having been made upon the day of payment, either directly in this book, or, in some instances, from loose memorandums made on the day upon which they were copied, or from entries similarly made in a smaller memorandum book.

The auditing judge is compelled to say that the books produced by the accountant are utterly unworthy of credit, and on their face bear evidence of fabrication. In many instances the entries in the small book have been altered and the figures written over erasures; in other cases the amounts do not correspond with those in the larger book into which it is said they were copied. An illustration of this appears in a credit claimed September 6, 1879, for shoes, $5, which in the smaller book is $3 only. Alterations of the figures in the small book, for the purpose, apparently, of making them agree with the entries in the large book, appear [giving 58 instances between January, 1879, and November, 1880], etc., etc.

The small book, it should be said, was not produced in court, but having been called for by the auditing judge, was sent to him the following day. It is probable that the alterations were made in the meantime. In the large book the entries for January, February, March, April, May, June, July, 1880, correspond precisely, in dates and amounts, with those during the similar months of 1879, the items, May 15, 1879, "Clothes, $10," "Baby coach, etc., $20," being repeated May 15, 1880, "Clothes, $10," "Baby coach, $20."

This was the condition of the book when first exhibited, June 3, 1885, but since then, in the entry for 1880, the words "Baby coach, etc.," have been erased, and the word "Clothes" written over them. In the small book the entry appears thus: "1880, May 12, Mary Hughes, for carriage baby, baby carriage, $20."

This would indicate that the items in the large book for 1879 were fabricated from those of 1880. It is not pretended that there was more than one baby carriage.

The fraud attempted in this case is so outrageous that it would be proper, perhaps, to allow no credit whatever for payments for the maintenance of the ward. She was a married woman. The duty of supporting her was upon her husband; so that even if the payments had been established as a material fact, they might, as a matter of law, be refused as credits, on the ground that it was improper to make them at all. The husband, however, appears, at times, especially during the winter season, to have been out of employment; and as he had no means other than his wages, an allowance, proportioned to the size of the estate and the necessities of the ward, would have been granted had application to the court been made for that purpose.

Mrs. Hughes admitted that many payments had been made to her, although in sums much smaller than alleged by the accountant, amounting, she thought, to an average of not over $5 per week, and as there is no evidence worthy of belief that more than that was paid, the credits will be reduced accordingly. As a matter of course, all commissions will be disallowed.

The account as restated by the judge debited the guardian with the amount received as admitted in his account of $3,158.-36, and credited him with the amount paid for repairs, taxes, water rents, professional services, furniture, etc., and for coal, amounting to $1,556.38, and only allowed $945 for maintenance of the ward, being $5 a week for 189 weeks.

He also credited the accountant with the expense of filing the account, etc., amounting to $23.50, leaving a balance due the ward of $633.48.

Exceptions to this adjudication were overruled by the court in banc, and the adjudication was confirmed. Haviland took this appeal, assigning as error the action of the court:

1. In adjudging that the testimony of the accountant was unworthy of belief, and in striking out all accountant's payments to minor, allowing him credit of only $5 a week.

2. In adjudging that the books of the accountant were unworthy of credit, and bore evidence of fabrication.

3. In disallowing the commissions of accountant.

*Pierce Archer,* for appellant.——The appeal taken here, under the act of 1836, is that this court may hear, try, and determine the merits of the case, and decree according to the justice and equity thereof. Bierly's Estate, 81* Pa. 427.

It is the duty of the guardian to expend money for the support of the ward, and credit will be allowed him, upon the adjudication of his account, if the expenditures were made in good faith. Flade's Estate, 40 Phila. Leg. Int. 131.

A guardian will be allowed a credit for the reasonable support of a minor out of the latter's estate in his hands, although no order for maintenance had been made by the court. Simon's Estate, 42 Phila. Leg. Int. 445.

The absence of a distinct and definite bargain, or of an order of court making an allowance for the support of a ward, will not prevent the court from making a proper allowance upon the settlement of the guardian's account, when the circumstances require it. Selleck's Appeal, 42 Phila. Leg. Int. 456.

Guardians and other trustees acting in good faith have always been treated with great tenderness. Bryson's Estate, 13 Lanc. Bar, 45 ; Gochenauer v. Froelich, 8 Watts, 22.

Guardians should not be held responsible for all negligence, and are allowed the exercise of reasonable discretion and prudential care in managing the property of their wards. Eyster's Appeal, 16 Pa. 376.

*John G. Johnson* for appellee.

PER CURIAM:

The facts found by the auditing judge show a flagrant case. The court confirmed the finding. Nothing is shown to us calculated to remove the conclusion of the court, based upon the fraudulent alterations found to have been made in the books.

Decree affirmed and appeal dismissed, at the costs of the appellant.